IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEW YORK LIFE INSURANCE CO., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-736 |
| | : | |
| REBECCA LEGAULT et al., | : | |
| Defendants. | : | |

Jones, II   J.                                                                                     October 23, 2015

# MEMORANDUM

On August 31, 2015, Rebecca Legault moved for Judgment on the Pleadings against Sharon Paige a/k/a Alfred Ricco. (Dkt No. 13 [hereinafter Legault MJP].)[1] On September 11, 2015, Francesco Papaleo filed a Response. (Dkt No. 19 [hereinafter Papaleo Resp.].) On September 21, 2015, Ms. Paige filed a Reply to Mr. Papaleo's Response. (Dkt No. 24 [hereinafter Paige Rep. to Papaleo Resp.].)

On September 17, 2015, Ms. Paige filed a Response, (Dkt No. 21), and an addendum thereto on September 18, 2015. (Dkt No. 23.) On September 29, 2015, Ms. Paige refiled her Response. (Dkt No. 27 [hereinafter Paige Resp.].)

On October 2, 2015, Ms. Legault filed a Reply in Support of her Motion for Judgement on the Pleadings. (Dkt No. 29 [hereinafter Legault Rep.].)

Upon consideration of Ms. Legault's Motion, (Legault MJP), Mr. Papaleo's Response, (Papaleo Resp.), Ms. Paige's Reply thereto, (Paige Rep. to Papaleo Resp.), Ms. Paige's Response, (Paige Resp.), and addendum thereto, and Ms. Legault's Reply, (Legault Rep.), is hereby ORDERED that said Motion is GRANTED. Ms. Paige is hereby DISMISSED from this action.

**I.   Standard of Law**

A party may move for judgment "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Under Rule 12(c), judgment will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and

---

[1] In Ms. Legault's original Motion for Judgment on the Pleadings, she moved against both Ms. Paige and Francesco Papaleo. (Legault MJP.) However, following Mr. Papaleo's appearance on the record and responses, Ms. Legault has withdrawn her motion against Mr. Papaleo. (Legault Rep. at 3-4.)

1

that he is entitled to judgment as a matter of law." *Jablonski v. Pan Amer. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir. 1988) (quoting *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). "In evaluating a Rule 12(c) motion, a court must view the pleadings in the light most favorable to, and draw all inferences in favor of, the nonmoving party." *Jablonski,* 863 F.2d at 290. The court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

## II. Background

### a. Action in Interpleader

On February 13, 2015, New York Life Insurance Company ("New York Life") filed a Complaint for Interpleader. (Compl.) On September 11, 2015, New York Life filed a Cross-Motion for Relief in Interpleader. (Dkt No. 18.) On September 14, 2015, the Court granted this Motion. (Dkt No. 20.) Pursuant to the Court's Order, on September 30, 2015, New York Life deposited $59,332.52 and $49,870.65 with the Registry of the Court. New York Life has been discharged of all liability related to this action.

### b. The Annuities

On May 8, 2015, Ms. Legault filed an Answer to the Complaint. (Dkt No. 3 [hereinafter Legault Ans.].) On July 29, 2015, Ms. Paige filed an Answer to the Complaint. (Dkt No. 9 [hereinafter Legault Ans.].) On August 31, 2015, Mr. Papaleo filed an Answer to the Complaint. (Dkt No. 15 [hereinafter Papaleo Ans.].)[2]

The Court reviews the facts in the light most favorable to the nonmoving parties. Marvin Samuels (the "Annuitant") was a member of the American Association of Retired Persons ("AARP") who applied for annuities under a policy issued by the Company to the Trustee of the AARP Annuity Trust (the "Group Trust"). (Dkt No. 1 [hereinafter Compl.] ¶¶ 2, 9-10.) The Annuitant received two individual annuities: annuity number R 00 079 95 ("Annuity A"), issued on May 19, 2009, and annuity number R 00 097 21 ("Annuity B"), issued on January 20, 2010 (collectively "the Annuities"). (Compl. ¶ 10.) There are three putative beneficiaries of the

---

[2] The Court further notes the following procedural history. On August 14, 2015, Ms. Legault moved for default against Mr. Papaleo. (Dkt No. 11.) Default was entered on August 14, 2015. On August 31, 2015, Mr. Papaleo answered the Complaint, (Papaleo Ans.), and answered Ms. Legault's Request for Default. (Dkt No. 17.) On September 29, 2015, the Court ordered that the default against Mr. Papaleo be set aside. (Dkt No. 26.)

Annuities: (1) Rebecca Legault, the Annuitant's niece, (2) Francesco Papaleo, the Annuitant's former domestic partner, and (3) Sharon Paige,[3] the Annuitant's friend. (Compl. ¶¶ 3-5.)

### i. Annuity A

On May 14, 2009, the Annuitant signed a Member Enrollment Form, Form GPA-IA ("MEF") for Annuity A, which designated Aaron Pogach, Esq. as the initial beneficiary to receive Annuity A benefits. (Legault Ans., Aff. Defs. ¶ 1; Dkt No. 3, Ex. A [hereinafter Annuity A MEF 2009].) Annuity A was issued on May 19, 2009. (Compl. ¶ 9.)

On March 9, 2011, the Annuitant designated Mr. Papaleo as sole first beneficiary to the Annuity A death benefits in a Member Enrollment Form. (Compl. ¶ 11; Dkt No. 1, Ex. A [hereinafter Annuity A MEF 2011].)[4] The Court notes that Ms. Paige disputes the authenticity of this document. (LeGault Ans. ¶ 11.)[5]

On May 7, 2012, the Annuitant filed a Beneficiary Change Form designating Ms. Legault as sole First Beneficiary to the Annuity A death benefits, and Robert Samuels as Second Beneficiary. (Compl. ¶ 13; Dkt No. 1, Ex. C [hereinafter Annuity A BCF 2012].)

### ii. Annuity B

On January 15, 2010, the Annuitant signed a Member Enrollment Form, Form GPA-IA for Annuity B, which designated Mr. Papaleo as the initial beneficiary to receive Annuity B benefits. (Legault Ans., Aff. Defs. ¶ 3; Dkt No. 3, Ex. B [hereinafter Annuity B MEF 2010].) Annuity B was issued on January 20, 2010. (Compl. ¶ 10.)

---

[3] Ms. Paige is alternatively referred to as "Alfred Ricco." Mr. Papaleo states that the "party's real name is Alfred Ricco." (Papaleo Ans. ¶ 5 n. 1.) Ms. Paige signed all court filings as "Ms. Paige." The Court will refer to this claimant as "Sharon Paige."

[4] New York Life referred to this document as a Beneficiary Change Form. (Compl. ¶ 11.) Ms. Legault answered that the form was not a Beneficiary Change Form, (Legault Ans. ¶ 11), but rather a Member Enrollment Form. (Legault Ans., Aff. Defs. ¶ 1.) The Court notes that the putative March 9, 2011 Beneficiary Change Form has the language and formatting of the docketed Member Enrollment Forms, (*see* Dkt No. 3, Ex. A; Dkt No. 3, Ex. B), and does not contain the language and formatting of other docketed Beneficiary Change Forms. (*See* Dkt No. 1, Ex. C; Dkt No. 1, Ex. D.) The Court construes this document as a Member Enrollment Form.

[5] Ms. Paige argues that the Annuitant's signature, the date, and other markings on the Annuity A and Annuity B Member Enrollment Forms are identical beyond coincidence and instead suggest forgery. (Paige Ans. ¶¶ 11-12.)

On October 29, 2010, the Annuitant filed a Beneficiary Change Form for Annuity B, designating Mr. Pogach as the first beneficiary and Ms. Paige as the second beneficiary. (Legault Ans., Aff. Defs. ¶ 3; Dkt No. 3, Ex. C [hereinafter Annuity B BCF 2010].)

On March 9, 2011, the Annuitant designated Mr. Papaleo as sole first beneficiary to the Annuity B death benefits. (Compl. ¶ 12; Dkt No. 1, Ex. B [hereinafter Annuity B MEF 2011].)[6] The Court notes that Ms. Paige disputes the authenticity of this document. (Paige Ans. ¶ 12.)[7]

On May 7, 2012, the Annuitant designated Ms. Legault as sole first beneficiary to the Annuity B death benefits. (Compl. ¶ 14; Dkt No. 1, Ex. D [hereinafter Annuity B BCF 2012].)

### c. Circumstances surrounding Annuitant's Death and the Claims for Death Benefits

According to Ms. Paige, at some date in September 2013, and again at some date in September 2014, the Annuitant told Ms. Paige that he had made her the beneficiary of his Annuities. (Paige Resp. at 9 n. 8.) On March 11, 2014, the Annuitant signed power of attorney over to Ms. Paige. (Dkt No. 1, Ex. F [hereinafter Power of Atty.].) Ms. Paige alleges that prior to his death, the Annuitant instructed Ms. Paige, pursuant to her power of attorney, to "obtain, and use his annuity funds…" and to "…get the money from the annuities." (Paige Resp. ¶¶ 3-10.) Ms. Paige alleges that at the time the Annuitant instructed her to "obtain and use, his annuity funds…" he was "of sound mind, not confused, befuddled and/or bewildered..." (Paige Resp. ¶¶ 5-6.) Further, Ms. Paige alleges that on May 4, 2014, she went to the Annuitant's house to retrieve information on how to change the beneficiary from Ms. Legault to herself, she found she was locked out due to allegedly fraudulent activity by Mr. Papaleo. (Paige Resp. at 6-9.)

On May 7, 2014, the Annuitant died. (Compl. ¶ 15; Dkt No. 1, Ex. E [hereinafter Death Certificate].) Due to the Annuitant's death, his Annuities, at the time of the filing of the Complaint, were worth $49,198.05 under Policy A and $58,535.47 under Policy B. (Compl. ¶ 16.)

On July 3, 2014, Mr. Papaleo asserted a claim to the Annuities. (Dkt No. 1, Ex. G.) On July 17, 2014, Ms. Paige sent a facsimile to New York Life asserting claims to the Annuities.

---

[6] New York Life referred to this form as a Beneficiary Change Form. (Compl. ¶ 12.) Ms. Legault answered that the form was not a Beneficiary Change Form, (Legault Ans. ¶ 12), but rather was a Member Enrollment Form. (Legault Ans., Aff. Defs. ¶ 4.) The Court will construe the document as a Member Enrollment Form.

[7] *See supra* note 5.

(Dkt No. 1, Ex. F at 1-3.) On October 8, 2014, Ms. Paige again sent a letter asserting a claim to the funds. (Dkt No. 1, Ex. F at 4.) In this letter, Ms. Paige stated that "immediately prior to the death of Dr. Samuels, he instructed me as his Power of Attorney to obtain, and use, his annuity funds for his immediate health care and longevity." (Dkt No. 1, Ex. F at 4.) On July 22, 2014, Ms. Legault submitted a claim for the Annuities. (Dkt No. 1, Ex. H.)

### III.   Discussion

Pennsylvania law applies to determine which of the Defendants is entitled to the Annuities. *Federal Ins. Co. v. Areias*, 680 F.2d 962, 963 (3d Cir. 1982). Under Pennsylvania law, generally, to change the beneficiary of an insurance policy, the policyholder must strictly comply with the policy's terms for changing the beneficiary. *Manufacturers Life Ins. Co. v. Dougherty*, 986 F.Supp. 928, 931 (E.D. Pa. 1997) (citing *Equitable Life Assurance v. Stitzel*, 299 Pa. Super. 199, 203, 445 A.2d 523, 525 (1982), *superseded on other grounds by In re Estate of Hoffman*, 54 A. 3d 903 (Pa. Super. Ct. 2012) (internal citations omitted)); *see also Alkhafaji v. TIAA–CREF Individual & Institutional Servs., LLC*, 69 A.3d 219, 222 (2013) ("[A] change of beneficiary requires strict or literal compliance with policy terms.").

However, "our case law has recognized an exception where an insured makes reasonable but unsuccessful efforts to send notice. This exception will recognize a change in beneficiary designation, even though notice is received after the death of the annuitant, if the annuitant made every reasonable effort to comply with the notice requirements of the policy." *Alkhafaji*, 69 A.3d at 222; *see also Cipriani v. Sun Life Insurance Co. of America*, 757 F.2d 78, 81 (3d Cir. 1985); *Teachers Ins. and Annuity Ass'n of America v. Bernardo*, 683 F.Supp.2d 344, 352 (E.D. Pa. 2010); *Stickney v. Muhlenberg College TIAA-CREF Retirement Plan*, 896 F.Supp. 412, 418 (E.D. Pa. 1986). The Court looks to a showing of "a positive, unequivocal act toward making the change, the mere declaration of intent to change the beneficiary is not enough." *Manufacturers Life Ins. Co.*, 986 F.Supp. at 931 (citing *Equitable Life Assurance*, 299 Pa. Super. at 203 (internal citations omitted)). "When the insured's intent and attempted compliance is clear, a court will exercise its equitable power to carry out the manifested intent and not permit that intent to be frustrated." *Provident Indemnity Life Insurance Company v. Durbin,* 541 F.Supp. 4, 8 (E.D. Pa. 1981).

First, no party disputes that on May 7, 2012, the Annuitant designated Ms. Legault as the sole first beneficiary of the Annuities via two Beneficiary Change Forms. (Annuity A

Beneficiary Change 2012; Annuity B Beneficiary Change 2012; Legault Ans. ¶¶ 13-14; Paige Ans. ¶¶ 13-14;[8] Papaleo Ans. ¶¶ 13-14.) Instead, Ms. Paige argues that the Annuitant intended to make her the beneficiary following these May 7, 2012 forms.

First, there is no dispute of fact as to the finding that the Annuitant did not follow New York Life's formal policy of filing a Beneficiary Change Form to effectuate the change of beneficiary from Ms. Legault to Ms. Paige.[9] The Court must, instead, turn to whether there is any dispute of fact in the record regarding whether the Annuitant exercised every reasonable effort under the circumstances to effectuate the change.

Even assuming that the Annuitant did tell Ms. Paige to get the money from the Annuities prior to his death, and that Ms. Paige went to the Annuitant's house in order to start that process, such actions are not evidence of "positive, unequivocal" acts showing that the Annuitant made every reasonable effort to effectuate the change. There is no evidence that the Annuitant, or Ms. Paige for that matter, contacted New York Life by phone or through any form of written communications prior to the Annuitant's death, despite the Annuitant being "of sound mind, not confused, befuddled and/or bewildered..." at this crucial time. (Paige Resp. ¶¶ 5-6.) There is no evidence that the Annuitant's will references the Annuities. The power of attorney authorization does not reference the Annuities. (Power of Attorney.) There is no written documentation evidencing the Annuitant's purported intent to transfer the Annuities to Ms. Paige. The only

---

[8] The Court notes that in her Answer to the Complaint, Ms. Paige stated the following regarding the Beneficiary Change forms that designate Ms. Legault as the sole first beneficiary:
> Acknowledges Plaintiff Exhibit "C" [and "D"] of court filings "Beneficiary Change Form" while questioning same after having been in conversation in 2012 with Mr. Papaleo who expressed the fact Marvin's brother Robert began calling Marvin after their brother Stanley died believing Robert was trying to influence Marvin to include him, Robert, in his (Marvin's) will, furthered by Robert sending Marvin a treadmill.

(Paige Ans. ¶¶ 13-14.)

In her Response to Ms. Legault's Motion for Judgement on the Pleadings, Ms. Paige disavows that she is making any claim based on fraudulent activities relating to these forms. (Paige Resp. ¶¶ 1-2, Arg. at 15-16.) Given that Ms. Paige has abandoned any argument refuting the Annuitant's mental and physical capacity to enter into this Beneficiary Change Form, the Court will not address such issues.

[9] The Court notes that filing a Beneficiary Change Form may not be the only method by which the Annuitant could have strictly complied with New York Life's policies regarding changing beneficiaries. The Court cannot make such a finding because no party has submitted New York Life's policies as to this point. However, the record is quite clear that no party disputes that the Annuitant did not strictly comply with said policies. Thus, the Court does not need to review the policies in order to find that there is no dispute of fact between the parties as to compliance with the policies.

evidence of the Annuitant's intentions regarding the Annuities is Ms. Paige's testimony regarding what the Annuitant said to her.

The declaration allegedly made by the Annuitant to Ms. Paige were, just that, declarations. Mere declarations are not enough to invalidate the legally binding Beneficiary Change Forms that clearly, and unequivocally, designate Ms. Legault as the sole beneficiary of the Annuities. There is no evidence whatsoever to support an argument that the Annuitant made *any*, let alone *every*, reasonable effort to change the beneficiary of his Annuities to Ms. Paige.

### IV.     Conclusion

There is no dispute of fact that Ms. Legault is the sole first beneficiary of the Annuities according to the May 7, 2012 forms. Further, there is no evidence in the record to find any dispute of fact that the Annuitant made every reasonable effort to change the beneficiary of the Annuities from Ms. Legault to Ms. Paige. Ms. Paige has absolutely no claim to the Annuities. Ms. Paige is barred from asserting any right, title or interest in or to the Annuities and asserting any claim against Ms. Legault, her agents, representatives, heirs, and assigns relating to the Annuities or this lawsuit.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.